# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Raymond Obiajulu,<br><br>    Plaintiff,<br><br>vs.<br><br>Rite Aid Corporation, a Delaware Corporation; Tamara Molina, an individual, in her official and individual capacity; Alan Keel, an individual, in his official and individual capacity,<br><br>    Defendants. | 2:04-CV-01520-BES (LRL)<br><br>**ORDER** |

Before the Court is the Motion to Dismiss Amended Complaint and Motion to Strike Prayer for Punitive Damages (the "Motion") filed by Defendants Rite Aid Corporation, Tamara Molina and Alan Keel (collectively "Defendants") (Doc. #9). Plaintiff Raymond Obiajulu ("Plaintiff") opposed Defendants' Motion to Dismiss (Doc #10). Thereafter, Defendants filed a Reply in Support of their Motion to Dismiss (Doc. #12).

## I. BACKGROUND

Plaintiff has been employed with Defendant Rite Aid Corporation ("Rite Aid") since January 15, 1999, as a staff pharmacist. (Doc. #10 at ¶10). Plaintiff joined the Professional, Clerical and Miscellaneous Employees, Local 995 (the "Union") the first day

of his employment with Rite Aid. (Doc. #10 at ¶11). The Union and Rite Aid entered into a collective bargaining agreement (the "CBA") covering employees, including Plaintiff. Under Article XV of the CBA, no employee shall be discharged except for "just cause" and the concepts of progressive discipline, with written notice preceding disciplinary suspension and discharge were to be used. (Doc. #10 at ¶9).

In January of 2004, Plaintiff attempted to purchase twenty (20) plastic "resin chairs" from the store where he worked and asked his store manager Defendant Tamara Molina, if he could get a price break, either through an employee discount or through an upcoming sale Plaintiff had learned about. Defendant Molina told Plaintiff that he could purchase the chairs for the sale price. (Doc. #2 at ¶13).

When Plaintiff returned to the store to purchase the chairs, he was not allowed to purchase the chairs as Defendant Molina had been instructed not to sell them to Plaintiff. (Doc. #2 at ¶14). Plaintiff went to another Rite Aid location, where he spoke to the store manager about purchasing the chairs. The store manager approved the purchase and Plaintiff was able to purchase the chairs on sale and also was given an employee discount pursuant to Rite Aid's policy of giving an employee discount on all purchases, including sale items. (Doc. #2 at ¶15).

When Defendant Molina learned from Plaintiff that he purchased the chairs from another Rite-Aid store, she informed Plaintiff that he should not have received the sale price and the employee discount. (Doc. #2 at ¶16).

On or about January 14, 2004, Plaintiff was called in to work on his day off to cover for another sick employee. (Doc. #2 at ¶17). When Plaintiff arrived at work, Plaintiff was informed that Rite-Aid was investigating the purchase of the chairs and had written reports from others involved. (Id.). When Plaintiff was asked to write a report, he inquired as to whether this interview would result in disciplinary action and was told that it might. (Id.). Plaintiff refused to write a report and immediately requested Union representation.

1  Plaintiff was informed that he was being suspended immediately and he was escorted from
2  the store.  (Id.).

3  On or about January 16, 2004, Plaintiff filed a Union grievance over the suspension.
4  (Doc. #2 at ¶18).  Plaintiff was presented with a settlement agreement, but disagreed with
5  the language of the settlement agreement and refused to sign it.  (Doc. #2 at ¶20).

6  On or about February 3, 2004, Plaintiff received a letter from Defendant Alan Keel,
7  Rite Aid Human Resource Manager, which stated the investigation had been completed
8  and that Rite-Aid was disciplining Plaintiff by suspending Plaintiff without pay until February
9  8, 2004.  The letter directed Plaintiff to return to work on February 9, 2004, which he did.
10  (Doc. #2 at ¶21).  Plaintiff's Union representative wrote a letter informing Rite-Aide that
11  Plaintiff had violated no policy and that the suspension was unfounded.  (Doc. #2 at ¶23).

12  Pursuant to the Article XVI, Section 3 of the CBA, an Adjustment Board hearing was
13  scheduled.  At that meeting, Rite Aid presented its position that Plaintiff had violated
14  company policy by receiving an employee discount on sale items, despite the employee
15  handbook's plain language to the contrary.   (Doc. #2 at ¶24).   When Plaintiff requested
16  to see the written policy he had allegedly violated, that request was summarily refused.
17  (Doc. #2 at ¶24).  At the Adjustment Board meeting, Plaintiff was not given the opportunity
18  to speak in his own behalf or address issues regarding the suspension.

19  The Adjustment Board decided that Plaintiff should only be paid for three days of
20  the suspension because he should have signed the settlement agreement.   (Doc. #2 at
21  ¶26). Plaintiff alleges that this decision represents an arbitrary and unfounded suspension
22  in clear violation of the terms and conditions plainly set forth in the collective bargaining
23  agreement. (Id.). On or about March 24, 2004, Plaintiff received the Adjustment Board's
24  written decision, which did not award the three days' pay discussed at the meeting, but
25  instead denied Plaintiff's grievance in its entirety.   (Doc. #2 at ¶28).

26  Plaintiff alleges that the suspension by Rite Aid was not based upon just cause, as

1    required by the CBA, but rather was imposed upon Plaintiff because of his race and
2    national origin. (Doc. #2 at ¶27). Plaintiff is African-American. (Doc. #2 at ¶ 29). Plaintiff
3    alleges that the other employees involved in the purchase of the chairs are white and were
4    not disciplined.  (Id.).

5    After returning to work, Plaintiff allegedly continued to be forced to endure
6    inappropriate racial comments by Defendant Molina and a racially hostile work
7    environment. (Doc. #2 at ¶30).   Plaintiff alleges that prior and subsequent to events
8    leading to the unlawful suspension, he had been subject to inappropriate and insensitive
9    remarks of a racial nature at his workplace.  (Doc. #2 at ¶12).

## II. ANALYSIS

11   In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P.
12   12(b)(6), the Court must accept as true all material allegations in the complaint as well as
13   all reasonable inferences that may be drawn from such allegations. LSO, Ltd. v. Stroh,
14   205 F.3d 1146, 1150 (9th Cir. 2000).  The allegations of the complaint also must be
15   construed in the light most favorable to the nonmoving party. Shwarz v. United States, 234
16   F.3d 428, 435 (9th Cir. 2000). The purpose of a motion to dismiss under Rule 12(b)(6) is
17   to test the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.
18   2001).  The Court can grant the motion only if it is certain that the plaintiff will not be
19   entitled to relief under any set of facts that could be proven under the allegations of the
20   complaint. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996).

21   *I.*    ***Statute of Limitations***

22   Defendants argue that Plaintiff's First Claim for Relief is barred by the applicable six-
23   month statute of limitations.  (Doc. #9 at 6-7).  The First Claim for Relief sets forth a claim
24   solely against Rite Aid for unlawful suspension in violation of the terms of the CBA.
25   Defendants argue that under the facts disclosed in Plaintiff's Amended Complaint, this
26   claim is time barred.   (Doc. #9 at 6-7).  Plaintiff admits that the matter is not timely filed,

1 but should be allowed because the circumstances warrant equitable tolling of the statute
2 of limitations. (Doc. #10 at 4).

3 Defendants assert that Plaintiff's case is a hybrid action because the First Claim for
4 Relief is brought under § 301 of the Labor Management Relations Act ("LMRA") and that
5 Rite Aid's action was supported by the Union in breach of its duty of fair representation
6 owing to Plaintiff. (Doc. #9 at 6). In a hybrid action, the employee generally sues the union
7 and the employer, though not necessarily both, alleging that the employer unfairly treated
8 the employee. Conley v. International Brotherhood of Electric Workers, Local 639, 810
9 F.2d 913, 915 (9th Cir. 1987). The plaintiff in a hybrid action also generally alleges that the
10 union violated the duty of fair representation owed the employee. (Id.)[1] The applicable
11 statute of limitations for a hybrid action is six months. Del Costello v. Teamsters, 462 U.S.
12 151, 171 (1983).

13 The Court finds that this action is a hybrid § 301 fair representation claim and the
14 six-month statute of limitations under DelCostello is applicable. Where a duty of fair
15 representation suit seeks to overturn an unfavorable arbitration award on the ground that
16 the union committed errors in the arbitration proceedings, the claim accrues when the
17 employee learns of the arbitrator's award. Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th
18 Cir. 1986).

19 In this case, Plaintiff's breach of duty of fair representation claim did not accrue until
20 Plaintiff learned, on March 24, 2004, of the Adjustment Board's written decision, which
21 denied Plaintiff's grievance in its entirety and did not award the three days' pay discussed
22 at the meeting. As the Complaint was filed on November 4, 2004, the complaint is not
23 timely filed.

24 Plaintiff did not dispute the applicability of a six-month statute of limitations and

---

[1] In contrast, in a straightforward action, the union usually sues the employer alleging that the employer breached the collective bargaining agreement. Conley, 810 F.2d at 915.

5

1  concedes that the claim is not timely. Instead Plaintiff argues that the circumstances here
2  warrant equitably tolling of the statute of limitations. (Doc. #10 at 4).  Plaintiff cites to
3  Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1135 (9th Cir. 2001), in support
4  of its position that equitable tolling is governed by Nevada State law and under Nevada
5  law, equitable tolling should be applied. (Doc. #10 at 4). However, Daviton provides no
6  basis on which to find that the statute of limitations on Plaintiff's claim against Rite Aid
7  should be equitably tolled.   In Daviton, the controlling statute of limitations was borrowed
8  from California law, so California's equitable tolling rules were applied.  In Plaintiff's case,
9  the statute of limitations is borrowed from federal law, so federal equitable tolling rules
10  apply. *See*, Walker v. Boeing Corp., 218 F.Supp.2d 1177, 1196-1197 (C.D. Cal. 2002).

11  The federal statute of limitations does not support Plaintiff's argument that the First
12  Claim for Relief should be allowed to proceed.  Plaintiff argues that the matter should be
13  equitably tolled because he did not sit idly by and instead was exhausting his administrative
14  remedies.  (Doc. #10 at 5).  The federal statute of limitations has been tolled in hybrid
15  cases only in situations where the plaintiff is required to pursue another course of action
16  before filing suit. Conley, 810 F.2d at 915. To allow tolling when the plaintiff's out-of-court
17  actions were merely optional "would frustrate the national policy of prompt resolution of
18  labor disputes." Conley, 810 F.2d at 916.  The filing of a NLRB action is optional and in no
19  way prevents a suit under § 301 as they are two parallel avenues of relief. *See*, Conley,
20  810 F.2d at 916.  As such, the filing of the NLRB action does not toll the statute.

21  Plaintiff attaches several documents to his Opposition in support of his position
22  concerning equitable tolling, but concedes that the evidence is not included in the
23  Amended Complaint. (Doc. #10 at 6).

24  In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure
25  12(b)(6), the Court cannot consider material outside of the complaint. Lee v. City of Los
26  Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  Where material outside of the complaint is

presented as part of a motion to dismiss, the Court has the discretion either to reject such evidence or to consider such evidence and convert the motion to dismiss into a summary judgment motion. Fed.R.Civ.P. 12(b); *see* Lee, 250 F.3d at 688.

The Court will not consider the evidence attached to Plaintiff's Opposition, but even if the evidence was attached to the Amended Complaint, it would not warrant equitable tolling of the statute of limitations. As stated above, to allow tolling when the plaintiff's out-of-court actions were merely optional "would frustrate the national policy of prompt resolution of labor disputes." Conley, 810 F.2d at 916. Furthermore, amending the Complaint to include these new facts would not help it to survive a subsequent motion to dismiss because they do not establish that the filing of the NLRB action was mandatory. The grant of the motion to amend would unfairly prejudice Defendants by virtue of the futility of the amendment. See, Foman v. Davis 371 U.S. 178, 182 (1962). As such, Plaintiff's request to amend the Complaint to add these new facts to the First Claim for Relief is denied.

## II. *Weingarten* **Rights Claim.**

Defendants have alleged that Plaintiff's punitive damages claim be stricken because a plaintiff employee is not entitled to recover punitive damages against his union or his employer in a suit under § 301 of the LMRA or claims arising out of Title VII. (#9 at 16). In his Opposition, Plaintiff specifically states that he does not oppose Defendants' Motion to Dismiss Plaintiff's Second Claim for Relief. As such, the Court grants Defendants' Motion to Dismiss the Second Claim for Relief.

## III. § 1981 Claim.

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint asserting a claim for employment discrimination pursuant to 42 U.S.C. § 1981 only must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002), quoting Fed.R.Civ.P. 8(a)(2); Maduka v. Sunrise

1  Hosp., 375 F.3d 909, 911-913 (9th Cir. 2004).  An employment discrimination plaintiff need
2  not plead a prima facie case of discrimination.  Swierkiewicz, 534 U.S. at 515.  The § 1981
3  cause of action need only allege that plaintiff suffered discrimination on the basis of race.
4  Parks School of Bus., Inc. v. Symington, 51 F.3d 1480, 1487 (9th Cir. 1995);  Karim-Panahi
5  v. Los Angeles Police Dep't, 839 F.2d 621, 625 (9th Cir.1988).   A lawsuit based on
6  conclusory allegations of discrimination can go forward."  Swierkiewicz, 534 U.S. at 514.
7   The key is whether Plaintiff's complaint "satisf[ies] only the simple requirements of Rule
8  8(a)."  Swierkiewicz, 534 U.S. at 513.

9  Here, Plaintiff alleges that Rite Aid and Defendant Molina interfered with Plaintiff's
10 right to make contracts because of Plaintiff's race and furthermore, that the actions taken
11 against him by these defendants have not been taken against any similarly situated non-
12 African-American employees.  (Doc. #2 at ¶¶ 48-49).  Plaintiff also alleges that as a result
13 of Rite Aid and Defendant Molina's actions of intentionally interfering with Plaintiff's rights
14 to make and enforce contracts because of his race, Plaintiff has suffered damages.  (Doc.
15 #2 at ¶ 50).  The Court finds that Plaintiff's allegations satisfy the simple requirements of
16 Rule 8(a) because the allegations contain a short and plain statement of the claim showing
17 that the pleader is entitled to relief.

18 ***IV.    Preemption of State Law Claims by LMRA***

19 Defendants argue that the Fourth and Fifth Claims for Relief should be dismissed
20 because the resolution of these claims is dependent upon the allegations of the First Claim
21 for Relief and the application of the CBA.  (Doc. #9 at 13).  Plaintiff argues that neither the
22 Fourth or Fifth Claim for Relief are dependent on the interpretation of the CBA. (Opposition
23 (#10) at 14).

24 Section 301(a) of the LMRA provides federal jurisdiction over suits for violation of
25 contracts between an employer and a labor organization.  29 U.S.C.  § 185(a).  A suit for
26 breach of a collective bargaining agreement is governed exclusively by federal law under

§ 301. Newberry v. Pacific Racing Association, 854 F.2d 1142, 1146 (9th Cir. 1988). The preemptive force of § 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement. (Id.)

When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law. *See*, Newberry, 854 F.2d at 1146, citing Avco Corp. v. Aero Lodge 735, 390 U.S. 557 [88 S.Ct. 1235, 20 L.Ed.2d 126] (1968). Accordingly, the key to determining the scope of a § 301 preemption is not based on how the complaint is framed, but whether the claims can be resolved only by referring to the terms of the bargaining agreement. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-406 (1988).

In this case, the Fourth Claim for Relief does not reference the CBA, nor is the analysis of the Fourth Claim for Relief dependent on the CBA. The Court finds that because the Fourth Claim for Relief is not dependent upon the CBA, it is not preempted and survives the Motion to Dismiss.

The Fifth Claim for Relief cannot be resolved without referring to the terms of the CBA. The Fifth Claim for Relief is a civil conspiracy claim against Rite Aid and Defendant Keel. It alleges that Defendants acted in concert with the Union and Union's representatives, intending to accomplish the objective of depriving Plaintiff of his rights under the collective bargaining agreement, under Title VII of the Civil Rights Act of 1964, *and* under 42 U.S.C. § 1981. (Doc. #2 at ¶ 62 (emphasis added)).

Plaintiff concedes that the state law claim for civil conspiracy is preempted if it is based upon Defendants' conduct which violated the LMRA. (Doc. #10 at 15). However, Plaintiff argues that his civil conspiracy claim may be based upon alleged violations of §

///

1981 or Title VII and not violations of the LMRA. (Id.)  The Amended Complaint does not support Plaintiff's argument.

Here, Plaintiff has alleged that Rite Aid and Keel acted in concert with the Union and the Union's representatives, intending to accomplish the objective of depriving Plaintiff of his rights. (Doc. #2 at ¶¶ 62-65).  The deprivation of rights Plaintiff complains of is his suspension without pay and without just cause, in clear violation of the plain terms of the CBA, which calls for progressive discipline and the application of the principles of just cause.  The Court finds that the civil conspiracy claim to suspend Plaintiff without pay and without cause is dependent upon an analysis of the CBA. The civil conspiracy claim cannot be resolved without referring to the terms of the CBA to determine if in fact the conduct of Defendants in suspending Plaintiff was done without cause and in violation of the progressive discipline policy as outlined in the CBA.

Plaintiff claims that the Fifth Claim for Relief should survive because there is the possibility that Plaintiff's civil conspiracy claim may be based upon alleged violations of Title VII or § 1981. (Doc. #10 at 15).   The Court disagrees that the Fifth Claim for Relief survives.   As explained above, resolution of the conspiracy claim is dependent upon the interpretation and/or application of the CBA and therefore, the conspiracy claim is fully displaced by the preemptive effect of federal law. Allis Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985); Newberry, 854 F.2d at 1146. Plaintiff even concedes this point. (Doc. #10 at 14). Because the Court holds that the state law conspiracy claim is preempted in its entirety under § 301, there is no need to address Plaintiff's arguments concerning Title VII and § 1981.  The Court finds that the Fifth Claim for Relief is dependent upon the CBA and is therefore preempted by federal law.   As such, the Fifth Claim for Relief is dimissed.

**V.    Motion to Strike Punitive Damages Claim**

Defendants assert that Plaintiff is not entitled to punitive damages as alleged in the First, Second, Third, Fourth and Fifth Claims for Relief because punitive damages are

1  preempted by § 301 and Title VII. (Doc. # 9 at 15-16). Defendants argue that the Court
2  should strike, with prejudice, Plaintiff's prayers for punitive damages with respect to each
3  of those five claims. (Id.)

4      Plaintiff concedes that the punitive damages claim should be stricken from the First
5  and Second Claims for Relief. (Opposition (# 10) at 15). However, Plaintiff argues that
6  the Third, Fourth and Fifth Claims for Relief do not depend upon the LMRA or an
7  interpretation of the CBA and therefore, the punitive damages claims survive. (Opposition
8  (# 10) at 16). Defendants counter that if the Court finds that Plaintiff's Third, Fourth and
9  Fifth Claims are completely preempted by § 301, then the prayer for damages for each
10 claim must fail. (Response (#12) at 6).

11     As stated above, the Third Claim for Relief is not preempted by § 301 and survives
12 the Motion to Dismiss. Nothing prohibits a plaintiff from seeking punitive damages in a §
13 1981 action, so this claim survives. See, 42 U.S.C. § 1981a. Similarly, the Fourth Claim
14 for Relief is not preempted by § 301 and that claim, along with its prayer for punitive
15 damages, survives. Finally, as explained above, the Fifth Claim is preempted by § 301,
16 so its punitive damages claim also is stricken.

17     In summary, Plaintiff's claim for punitive damages claims are stricken in the First,
18 Second and Fifth Claims for Relief.

19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss (#9) be **GRANTED IN PART and DENIED IN PART**. Defendants' Motion to Dismiss (#9) on Plaintiff's First, Second and Fifth Claims for Relief, under § 301 of LMRA, is **GRANTED**. Defendants' Motion to Dismiss (#9) on Plaintiff's Third and Fourth Claims for Relief is **DENIED**. Plaintiff's claims for punitive damages on the First, Second and Fifth Claims for Relief are dismissed. Let judgment be entered accordingly.

DATED: This 13th day of June, 2006.

_____
UNITED STATES DISTRICT JUDGE